UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GERALD A. WEST,                :
                               :
          Plaintiff            :    No. 1:15-CV-00858
                               :
     vs.                       :    (Judge Kane)
                               :
LIEUTENANT MILLER, et al.,     :
                               :
          Defendants           :


MEMORANDUM

I.   Background

          On May 4, 2015, Plaintiff Gerald A. West, an inmate
incarcerated at the United States Penitentiary at Canaan, Waymart,
Pennsylvania ("USP-Canaan"),[1] filed a complaint pursuant to 28
U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the
Federal Bureau of Narcotics, 403 U.S. 388 (1977)[2] against the
following ten individuals employed by the Federal Bureau of
Prisons ("BOP") at the United States Penitentiary, Lewisburg,
Pennsylvania ("USP-Lewisburg"): (1) J. E. Thomas, Warden
(retired); (2) S. Brown, Health Services Administrator; (3) K.

---

1.   West is presently incarcerated at the Trumbull Correctional
Institution, Leavittsburg, Ohio.

2.   28 U.S.C. § 1331 states as follows: "The district court shall
have original jurisdiction of all actions arising under the
Constitution, laws, or treaties of the United States."

     Bivens stands for the proposition that "a citizen suffering
a compensable injury to a constitutionally protected interest
could invoke the general federal question jurisdiction of the
district court to obtain an award of monetary damages against the
responsible federal official." Butz v. Economou, 438 U.S. 478,
504 (1978).

Pigos, Health Services Clinical Director; (4) G. George, Infection Control Coordinator (paramedic during the relevant time period); (5) S. Dees, paramedic; (6) R. Miller, General Maintenance Foreman (Lieutenant during the relevant time period); and (7) D. Nogle, (8) J. Hardy, (9) S. Argueta, and (10) T. Crawford, correctional officers. (Doc. No. 1, Complaint; Doc. No. 11, Waiver of Service of Summons;  Doc. No. 14, Statement of Material Facts, ¶ 2.)

In the complaint, West asserts claims relating to two incidents separated by several months.  The first occurred on May 14, 2013, and the second one on August 22, 2013.  With respect to the first incident, West alleges that while he was on a hunger strike, he refused a request by Defendant George to submit to hand restraints to enable medical staff to take his vital signs; he was then removed from his cell by Defendants Miller and George, escorted to the medical department and while his vital signs were being checked, a food tray was placed in his cell by Defendant Nogle based on instructions from Defendant Miller, which resulted in West being removed from "hunger strike status;" when he was told of the food tray he advised Defendant Miller that he would not allow them to remove his hand restraints until the food tray was taken out of his cell; in response to that statement, Defendant Miller entered West's cell and "started punching" West while Defendant George "stood at the door as a lookout;" Defendant Miller then directed that Defendant Nogle escort West "upstairs;" when West reached the "third floor" Defendant Miller "hit [him] in

the back of the head," Defendant Nogle "slammed [him] to the floor," and Defendant George "jump[ed] on [his] back and started choking [him];" prison staff then made a call for assistance, Defendants Crawford and Argueta arrived, Defendant Crawford "started hitting [him] with a stick" and Defendant Argueta "held [his] head down and kneed [him] in the face several times," and the correctional officers continued to assault him "for a couple of minutes" until an unidentified staff member stated, "stop hitting him we are about to start recording;" he was then placed into restraints while being videotaped, and he requested medical treatment for a broken hand; and he was then placed in a "restraint cell in D unit" and after twenty minutes Defendant Miller returned with several correctional officers and removed his mattress and "told [him] he was no longer on hunger strike." (Doc. No. 1, at 2-4.)

With respect to the second incident, West alleges that on August 22, 2013, he was continuing his hunger strike when he was asked by Defendant Dees to submit to restraints so that his vital signs could be checked and he again refused; shortly thereafter, Defendant Hardy, and another officer who is not named as a defendant, came to his cell and told him to submit to hand restraints or be charged with the prohibited act of threatening an officer, but West "did not respond;" the other correctional officer told Defendant Hardy to "write [West] up for threatening him" and then "approximately one hour later several officers came

3

to [his] cell, with a hand held camera," placed him in restraints, took him to "the infirmary," and held him down while Defendant Dees administered "two gallons of IV fluids into [his] body;"[3] while the IV fluid was being administered correctional officers would block the view of the hand held camera and gouge his eyes and choke him; and after the administration of the IV fluid, he was taken to a restraint cell and removed from hunger strike status. (Id. at 5-6.)

Based on the above allegations, West claims that Defendants Brown, Pigos and Thomas violated his rights under the Eighth Amendment; Defendant Hardy retaliated against him by filing a false incident report which caused him to be placed in restraints; Defendant Dees administered two gallons of IV fluid without his consent while correctional officers forcefully held him down; and Defendants Crawford and Argueta violated his Eighth Amendment rights when they assaulted him while on the ground in restraints. Although he does not specifically indicate that Defendants Miller and George violated his Eighth Amendment rights, the allegations, if proven, would implicate the 8th amendment. (Id. at 6.) West requests an award of compensatory damages in the total amount of $1,000,000.00. (Id. at 3.)

---

3. Fluids can be given intravenously for several reasons, including in cases of dehydration. The record reveals that West had missed 18 meals as of the morning of August 22, 2013, and needed 2 liters of fluid which is about ½ gallon which was administered through a 28 gram IV catheter. (Doc. No. 14-1, at 96-97.)

On May 4, 2015, the court issued a Standing Practice Order which advised West, inter alia, of his obligation to file briefs in support of his motions and in opposition to motions filed by Defendants, including motions for summary judgment, and with respect to a motion for summary judgment his obligation to respond to a statement of material facts filed in conjunction with such a motion. (Doc. No. 4.)  Attached to the Standing Practice Order were copies of the relevant Local Rules of Court, including Local Rule 56.1. (<u>Id.</u>)

Along with the complaint, West filed a motion to proceed <u>in forma pauperis</u> but did not file an authorization to have funds deducted from his prison account to pay the filing fee in installments. (Doc. No. 2.)  Consequently, the court also on May 4, 2015, issued an Administrative Order directing West to pay the filing fee in full or file the authorization form within 30 days. (Doc. No. 5.)  On May 29, 2015, West filed the authorization form and the court on May 2, 2015, directed the Clerk to send waiver of service forms to Defendants. (Doc. Nos. 7, 8.)

The Defendants waived service of the complaint on June 15, 2015, and on August 3, 2015, filed a motion to dismiss the complaint and/or for summary judgment in their favor. (Doc. No. 12.) Defendants on August 17, 2015, filed  a brief in support of that motion and a statement of material facts in accordance with Local Rule 56.1 along with evidentiary materials. (Doc. Nos. 14, 14-1, 15.)

On September 4, 2015, West filed a motion for extension of time to file a brief in opposition. (Doc. No. 18.)  On September 9, 2015, the court granted West an extension of time until October 18, 2015. (Doc. No. 20.)  On October 19, 2015, West filed a second motion for extension of time to file a brief. (Doc. No. 21.)  On October 20, 2015, the court issued an order granting West an extension of time to file a brief until November 20, 2015. The order further advised West that failure to comply with the order would result in the dismissal of West's complaint for failure to prosecute and abide by a court order.

On December 15, 2015, this case was dismissed and closed based on review of the docket which at that time showed that West failed to file a brief in opposition and a response to Defendants' statement of material facts. (Doc. Nos. 24, 25.)  On December 30, 2015, West filed a motion for reconsideration (Doc. No. 27) and a document entitled "Plaintiff (sic) Brief In Opposition to Defendants' Motion to Dismiss and for Summary Judgment" (Doc. No. 26) which consisted only of a cover page, table of contents, table of authorities, and certificate of service.  The so-called brief was dated November 23, 2015, after the deadline for filing a brief.  Subsequently, the court discovered that a brief in opposition and two attachments filed on December 10, 2015, in <u>West v. Shultz, et al.</u>, 1:12-CV-1004, should have been filed in the above-captioned case and the court directed that those documents be filed in the above-captioned case as of December 10, 2015.  On

6

the first page of the brief (Doc. No. 28, at 1) West had the incorrect case number, that is 1:12-CV-1004, but on the attachments (Doc. No. 28, at 9; Doc. Nos. 28-1, 28-2) West set forth the correct case number, 1:15-CV-858.  The attachments are West's response to Defendants' statement of material facts, an unsworn declaration under penalty of perjury signed by West and several exhibits.  All of these documents were dated November 23, 2015.

On January 14, 2016, Defendants filed a motion for enlargement of time until February 4, 2016, in which to respond to West's motion for reconsideration. (Doc. No. 30.)  The court granted that motion and on February 4, 2016, the Defendants filed a second motion for enlargement of time and, subsequently, filed their brief in opposition on February 11, 2016. (Doc. No. 35.) The motion for reconsideration became ripe on February 26, 2016, when West filed a reply brief. (Doc. No. 36.)

Although opposed by Defendants, West's motion for reconsideration will be granted because West did file a brief in opposition prior to the court issuing its order on December 15, 2015, dismissing the case for failure to prosecute. Consequently, the court will address the merits of Defendants' motion to dismiss and/or for summary judgment.

For the reasons set forth below the court will grant Defendant's motion to dismiss and/or for summary judgment.

## II.    Motion to Dismiss

Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662,___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we

8

separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). In ruling on a motion to dismiss under Rule 12(b)(2), the court is required, as with Rule 12(b)(6) motions, to accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). However, the scope of the Court's review on a Rule 12(b)(2) motion is not limited to the face of the complaint, but may include affidavits and other competent evidence submitted by the parties. Patterson v. FBI, 893 F.2d 595, 603-604 (3d Cir. 1990).  The plaintiff, ultimately, bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

III.   **Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a

genuine issue of material fact, the nonmoving party is required by
Rule 56 to go beyond the pleadings with affidavits, depositions,
answers to interrogatories or the like in order to demonstrate
specific material facts which give rise to a genuine issue.
Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The
party opposing the motion "must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574,
586 (1986).  When Rule 56 shifts the burden of production to the
nonmoving party, that party must produce evidence to show the
existence of every element essential to its case which it bears
the burden of proving at trial, for "a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  Celotex, 477
U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d
Cir. 1992).

**III.   Statement of Facts**

　　　Local Rule 56.1 states in toto as follows:

　　A motion for summary judgment filed pursuant to
Fed.R.Civ.P. 56, shall be accompanied by a separate,
short and concise statement of the material facts,
in numbered paragraphs, as to which the moving party
contends there is no genuine issue to be tried.

　　The papers opposing a motion for summary judgment
shall include a separate, short and concise statement
of the material facts, responding to the numbered
paragraph set forth in the statement required in the

foregoing paragraph; as to which it is contended that
there exists a genuine issue to be tried.

Statement of material facts in support of, or in
opposition to, a motion shall include references to
the parts of the record that support the statements.

All material facts set forth in the statement
required to be served by the moving party will be deemed
to be admitted unless controverted by the statement
required to be served by the opposing party.

M.D. Pa. LR 56.1 (emphasis added). As stated above a standard
practice order was issued on May 4, 2015, which advised West of
the requirements of several Local Rules of Court, including Local
Rule 56.1.

On August 17, 2015, the Defendants filed a statement of
material facts in accordance with Local Rule 56.1 along with
evidentiary materials. (Doc. Nos. 14, 14-1.) The Defendants'
statement consists of 72 numbered paragraphs and all of them
except two refer to parts of the record which support the
paragraphs or refer to BOP regulations. Id. West on December 10,
2015, filed a document entitled "Statement of Material Facts"
(Doc. No. 28, at 9-15) which purports to respond to the
Defendants' 72 paragraphs. However, in that document West
confirmed all of the Defendants' paragraphs except for 21 of those
paragraphs. With respect to 18 of those 21 paragraphs (paragraphs
24, 25, 26, 27, 31, 32, 34, 35, 40, 41, 42, 45, 49, 50, 67, 68,
70, and 71) when denying those paragraphs West failed to provide

12

an explanation for the denial or refer to parts of the record that supported his denial. Id.  Furthermore, as will be explained *infra* the record amply supports the 18 paragraphs.  With respect to paragraph 1 West did not confirm or deny the paragraph but merely noted that he is presently an Ohio state prisoner and no longer incarcerated at USP-Canaan.  With respect to paragraph 15 West did not confirm or deny the paragraph but merely added information. West in response to paragraph 15 notes that in addition to Defendant George, Defendants Miller and Nogle on May 4, 2013, escorted him to the third floor and "all three assaulted him." This response basically mirrors West's allegations in the complaint.  Finally, with respect to paragraph 18, West did not specifically confirm or deny the paragraph but adds information. In response to paragraph 18 West admits that Defendant Hardy "did not participate in the use of force."[4]

     The first 23 paragraphs of Defendants' statement of material facts essentially mirror the allegations of West's complaint.

---

4.  West also submitted an unsworn declaration under penalty of perjury (Doc. No. 28-2, at 2) in which he claims that he appealed to the Regional Office and then the Central Office of the BOP the sanctions imposed on June 6, 2013, by the DHO with respect to Incident Report 2444367 (Prohibited Act 224, Assaulting Without Serious Injury), relating to his assault on Defendant Nogle on May 14, 2013.  The evidence submitted by Defendants confirms West's claim.

Starting with paragraph 24 Defendants' statement of material facts is undisputed because West failed to refer to any contrary evidentiary materials. Furthermore, the paragraphs are supported by the unsworn declarations under penalty of perjury from Defendants Nogle, Miller, Argueta, George, Crawford, Hardy and Dees; a declaration under penalty of perjury and evidentiary materials from Michael S. Romano, an attorney advisor at USP-Lewisburg, relating, inter alia, to West's exhaustion of administrative remedies;[5] disciplinary hearing records relating to the Incident Reports issued with respect to the events of May 14 and August 22, 2013; and memoranda from seven correctional officers, not named as defendants, who witnessed the incident of May 14, 2013. (Doc. No. 14-1, at 1-108, Record in Support of Defendants' Motion to Dismiss and for Summary Judgment.)

---

5.   The declaration of attorney Romano which is dated July 21, 2015, reveals that West was serving a sentence for armed bank robbery with a projected released date of August 4, 2015. The declaration further reveals that West had an extensive disciplinary history for assault, threatening bodily harm, refusing orders, interfering with staff, insolence, interfering with security devices, using martial arts/boxing, possession of a weapon, fighting, and taking a hostage. The exhibits attached to the declaration (Doc. 14-1, at 10-11) further reveal that on August 18, 2004, West was sentenced by the United States District Court for the Northern District of Ohio to a term of 146 months followed by 5 years of supervised release for armed bank robbery, 18 U.S.C. § 2113(a) & (d), and that on January 1, 2005, he was sentenced by the same court to a term of 51 months to be followed by 3 years of supervised release for escape, 18 U.S.C. § 751(a). The sentence for escape was to be served concurrently with the sentence imposed for the armed bank robbery conviction.

14

Paragraphs 24 through 39 relating to the May 14, 2013, incident state as follows:

24. On May 14, 2013 an "Immediate Use of Force" occurred at USP Lewisburg, described as follows:

On May 14, 2013, at 9:36 a.m., the D-Block Officer called for assistance when Inmate West . . . became disruptive in the third floor Administrative Office Area. Specifically, Inmate West was being escorted from the holding cell, when he became assaultive and kicked the escorting Officer in the left leg. Inmate West was placed on the floor, until additional staff arrived and regained control of the inmate. Due to Inmate West's continued disruptive behavior, assaulting staff and displaying signs that he was not in control of himself physically or emotionally, as well as being a disruption to the institution, the Warden was contacted and authorized Inmate West to be placed in immediate ambulatory restraints. Inmate West was visually searched, metal detected, placed in new clothes, and placed in ambulatory restraints at 9:58 a.m. Inmate West was then escorted to D-Block and placed in cell #101 without further incident. Inmate West was medically assessed and sustained no injuries. The staff member involved was medically assessed and sustained redness to the left knee.

®. 53, Form 583 Report of Incident.)

25. Officer Nogle was the escorting officer who was kicked by West and then placed West on the floor in order to regain control over him. ®. 55, Incident Report No. 2444367.)

26. Paramedic George reported that he responded to the call for assistance, observed West "kicking his legs in an attempt to assault staff," and he "controlled inmate West's legs until [he] was relieved by responding staff." ®. 56, Memorandum of G. George.)

27. Lieutenant Miller reported that he also responded to the call for assistance and "observed staff regaining control of inmate West . . . on the floor who continued

15

to be disruptive." ®. 64, Memorandum of R. Miller; R. 78-79, Miller Decl.)

28. Officer Argueta reported that he also responded to the call for assistance and "relieved initial staff and took control of inmate West['s] . . . upper appendage." ®. 65, Memorandum of S. Argueta.)

29. Officer Argueta also conducted the visual search, metal detection, clothing replacement and placement of West into ambulatory restraints. (Id.)

30. Officer Crawford reported that he also responded to the call for assistance, and when he arrived, West was already being controlled on the floor. ®. 66, Memorandum of T. Crawford.)

31. He relieved initial staff and assisted in controlling West's lower right appendage. (Id.)

32. Officer Crawford additionally controlled West's upper right appendage while he was being placed into ambulatory restraints.[6]

33. Memoranda of other staff who are not defendants in this case (Officer J. Treibley, Lieutenant M. Saylor, Lieutenant J. Benfer, Officer J. Carpenter, Officer M. Russo, Lieutenant B. Shade and Officer J. Vayda) corroborate the facts set forth in Defendants' memoranda (See R. 57-63.)

34. West was brought to Health Services and examined at 10:19 a.m. ®. 67, BOP Medical Record.)

35. It was noted that West had "[n]o injuries or complaints verbalized by inmate at this time." (Id.)

---

6.  There were only two paragraphs of Defendants' statement of material facts which did not reference portions of the record or refer to BOP regulations.  Paragraph 21 does not refer to West's complaint although a review of the complaint supports the paragraph.  Likewise, paragraph 32 does not refer to a document in the record but a review of Crawford's memorandum referred to in paragraphs 30 and 31 reveals: "While the inmate was being placed into ambulatory restraints I then controlled the upper right appendage."

36. An After Action Review was conducted of this immediate use of force, and the determination was made that "[t]he actions taken with respect to the use of force and/or restraints were reasonable and appropriate and have been reviewed with staff involved." ®. 69, Form 586 After Action Review Report.)

37. Officer Nogle wrote an Incident Report against West, charging him with Assaulting any Person, in violation of Code 101, and Refusing to Obey an Order, in violation of Code 307. ®. 55, Incident Report.)

38. A hearing of the Disciplinary Hearing Officer ("DHO") was conducted on June 4, 2013, and the DHO determined that West committed the prohibited act of Assaulting Without Serious Injury, in violation of Code 224. ®. 71-74, DHO Report; R. 12, BOP SENTRY Report, Inmate Discipline Data.)

39. He received sanctions including the loss of 27 days of Good Conduct Time ("GCT") credit toward his criminal sentence. (Id.)

Of particular note is a memorandum from a non-defendant correctional officer who observed the events of May 14, 2013. Senior Officer Specialist J. Treibley prepared a memorandum on May 14, 2013, in which he stated that at approximately 9:36 a.m., he called for assistance because West assaulted (kicked) a correctional officer in the leg, and West was placed on the ground, "refused all orders to comply and remained verbally and physically assaultive." (Doc. 14-1, at 69.) Also, the medical records relating to this incident reveal that West was evaluated by Noel Trusal, a certified registered nurse practitioner ("CRNP"), at 10:19 a.m. on May 14, 2013. During the evaluation by CRNP Trusal, West as noted above reported "no injuries or

17

complaints[.]"(<u>Id.</u> at 69.) Furthermore, a physical examination performed by CRNP Trusal revealed no abnormalities. (<u>Id.</u> at 69-70.)

Paragraphs 40 through 55 of the Defendants' statement of material facts relating to the August 22, 2013, incident and which are undisputed state as follows:

> 40.  On August 22, 2013, an "Immediate Use of Force" occurred, described as follows:
>
> On August 22, 2013, at approximately 6:50 a.m., Inmate West . . . became disruptive, by refusing to submit to hand restraints so medical staff could draw blood and conduct a medical examination, due to the inmate being on hunger strike. Specifically, Inmate West refused to submit to hand restraints and displayed signs of imminent violence by stating he would assault any staff who opened the cell door food slot. Due to Inmate West's refusal of staff orders as well as his display of imminent violence, the Warden was notified and authorized a Use of Force Team to be assembled. At approximately 7:40 a.m., a Use of Force Team was assembled and confrontation avoidance procedures were initiated with positive results. Inmate West submitted to hand restraints and was removed from cell #115 and escorted to the first floor shower of D-Block where he was visually searched, metal detected, put in new clothing, and placed into ambulatory restraints at 7:54 a.m. Inmate West was then escorted to health services to complete the initial medical exam, which revealed he was dehydrated due to being on hunger strike. Health Services administered 2 liters of IV fluids and the inmate was returned to D-Block cell #101 where he will remain until he has shown the desired calming effect. No staff injuries were reported.
>
> ®. 77, Form 583 Report of Incident.)
>
> 41. Officer Hardy gave West the order to submit to hand restraints, which West refused, and he heard West threaten to "cut any staff member who tried to remove him from his cell." ®. 90-91, Declaration of J. Hardy.)

42. Paramedic Dees was present at West's cell when he refused to be medically assessed due to his hunger strike. ®. 92, Declaration of S. Dees.)

43. She contacted a lieutenant to assemble the Use of Force team.(Id.)

44. After being placed into ambulatory restraints, West arrived in Health Services at 7:30 a.m. ®. 80, BOP Medical Record.)

45. It was noted that West was "alert and oriented in no acute distress," that he complained "of old injury to left wrist," and that there were no injuries or deformities of the wrist. (Id., at 80-81.)

46. It was further noted that West was on a "declared hunger strike" and that he had missed 18 meals as of that morning. (Id., at 82.)

47. It was noted that West refused to cooperate with the hunger strike evaluation. (Id., at 83.)

48. Paramedic Dees contacted Dr. Pigos, who ordered IV fluids to be administered to West. ®. 93, Dees Decl.)

49. West received 20g IV fluids in his left forearm. (Id.)

50. He was restrained in the supine position during the infusion of the IV fluids. (Id.)

51. Following the IV infusion, West was escorted to a cell by the Use of Force Team. (Id.)

52. An After Action Review was conducted regarding this incident, and it was determined that "[t]he actions taken with respect to the use of force and/or restraints were reasonable and appropriate and have been reviewed with staff involved." ®. 84, Form 586 After Action Review Report.)

53. Officer Hardy wrote an Incident Report against West, charging him with Threatening another with bodily harm, in violation of Code 203; and Refusing to obey an order of any staff member, in violation of Code 307. ®. 79, Incident Report No. 2483187.)

19

54. A hearing of the DHO was conducted on September 3, 2013. R. 86, DHO Report.)

55. The DHO determined that West committed the prohibited act as charged, and imposed sanctions against him including the loss of 27 days of GCT. (Id., at R. 88.)

The record contains no indication that the sanction of loss of 27 days of good conduct time was set aside on administrative appeal or by the issuance of a writ of habeas corpus.

Paragraph 56 through 63 which are undisputed set forth the BOP's administrative remedy provisions. The BOP has a 4-level administrative remedy process (i.e., informal, institutional, regional and central office resolution of his complaint). Initially an inmate is required to attempt to informally resolve his complaint with prison staff within 20 days of the events giving rise to the complaint and this informal process has to be concluded before an inmate goes onto the next step and submits a Request for Administrative Remedy to the Warden of the institution. 28 C.F.R. §§ 542.13(a). An inmate has 20 days from the denial of an informal request to submit an Administrative Remedy Request (form BP-9) to the Warden. 28 C.F.R. 542.14(a). If the warden denies the complaint at the institutional level, the inmate has 20 days to submit an Appeal (form BP-10) to the appropriate Regional Director. 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's decision, the inmate has 30 days to submit and Appeal (form BP-11)

to the General Counsel at the Central Office of the BOP. <u>Id.</u>  An
inmate must submit his grievance to each level of the
administrative process and in the above order.  A grievance which
is first presented at the Regional Office level and which was not
presented at the Institutional level will be rejected. 28 C.F.R. §
542.15(b)(2).  However, with respect to appeals from a decision of
a DHO, the first two steps, informal resolution and appeal to the
Warden, do not apply. 28 C.F.R. § 542.14(d)(2).  The inmate is to
appeal directly to the Regional Office and then to the Central
Office. (<u>Id.</u>)  No administrative remedy appeal is considered to
have been fully and finally exhausted until it has been denied by
the BOP's Central Office. (<u>Id.</u>)

   Paragraphs 64 through 72 of Defendants' statement of
material facts, which are also undisputed and supported by the
declaration of attorney Romano, reveal that West failed to exhaust
his administrative remedies and state as follows:

> 64. A review was conducted of West's administrative
> remedy records filed from January 1, 2013 through July
> 12, 2015, to determine whether West fully exhausted any
> of the claims raised in the Complaint. ®. 2, Romano
> Decl. ¶ 5.)

> 65. This review revealed that West filed 20
> administrative remedies within that time period, ten of
> which were rejected for various reasons. (Id.; R. 40-50,
> BOP SENTRY Report, Administrative Remedy Generalized
> Retrieval.)

> 66. Of the remaining administrative remedies filed by
> West, Remedy No. 723803 was an appeal of extension of

his SMU assignment, which is not a claim raised in the Complaint. ®. 3, Romano Decl.; R. 43-45, Report.)

67. Remedy No. 739411 was an appeal of a decision of a Discipline Hearing Officer, which is not a claim raised in the Complaint.( R. 3, Romano Decl.; R. 46-47, Report.)

68. Remedy No. 764521-F1, which is described on the Report as "claims staff misconduct," was filed at the institution level on January 14, 2014 and denied on January 29, 2014. ®. 4, Romano Decl.; R. 48, Report.)

69. On February 10, 2015, West appealed the denial of this remedy to the BOP Regional Office (Remedy No. 764521-R1), and the remedy was denied on March 12, 2014. (Id.)

70. The record demonstrates that West did not appeal this remedy to the BOP Central Office level. ®. 40-50, Report.)

71. Remedy No. 773890 was an appeal of a Unit Discipline Committee (UDC) decision regarding an incident report, which is not a claim raised in the Complaint. ®. 4, Romano Decl.; R. 49, Report.)

72. Remedy No. 803650, is described as "policy – spending limit," which is not a claim raised in the Complaint. R. 4, Romano Decl.; R. 50, Report.)

The BOP SENTRY Report, Administrative Generalized Retrieval, was attached as an exhibit to attorney Romano's declaration. (Doc. No. 14-1, at 41-52.) That report reveals that 11 of the 20 administrative remedies were filed by West prior to May 14, 2013, and could not have therefore been related to the events of May 14 or August 22, 2013. (Id. at 41-48.)

Each administrative remedy is given an identification number upon submission, and each number is then followed by a

letter representing the level that particular remedy was filed at, and a number to indicate how many times that remedy was filed at each particular level. See Parks v. Edinger, 2016 WL 687995, at *5 (M.D.Pa. Feb. 19, 2016)(Rambo, J.). The letter "F" indicates the institutional level, the letter "R" represents the Regional Office of the BOP and the letter "A" represents the Central Office of the BOP. (Id.)

West's remaining 9 administrative remedies filed after May 14, 2013, are as follows: 739411-R1, 740975-R1, 739411-A1, 764521-F1, 764521-R1, 773890-F1, 773890-F2, 802395-F1 and 803650-F1.

Administrative Remedy Nos. 739411-R1 and 739411-A1 were an appeal submitted on June 19, 2013, to the Regional Office and then submitted on August 8, 2013, to the Central Office from the decision of the DHO dated June 6, 2013, finding him guilty of the prohibited act of assaulting without serious injury and sanctioning him 27 days loss of good conduct time. (Doc. No. 14-1, at 48-49.)

Administrative Remedy No. 740975-R1 related to a "staff complaint" and was only presented to the Regional Office. (Id. at 49.)

Administrative Remedy Nos. 764521-F1 and 764521-R1 were an Institutional Appeal to the Warden at USP-Lewisburg and then to the Regional Office regarding "claims of staff misconduct" and as

stated in Defendants' statement of material facts West did not file an appeal to the Central Office. (<u>Id.</u> at 50.)

The remaining Administrative Remedies (773890-F1, 773890-F2, 802395-F1 and 803650-F1) were only filed at the Institutional level and are unrelated to the claims raised in West's complaint. (<u>Id.</u> at 51-52.) Administrative Remedy No. 773890-F1 which was submitted on April 2, 2014, related to sanctions imposed by the Unit Discipline Committee ("UDC") and it was rejected because West did not attach a copy of the incident report and he was advised to resubmit the Administrative Remedy. (<u>Id.</u>)  Administrative Remedy No. 773890-F2 which also was submitted on April 2, 2014, was the resubmitted appeal of the UDC sanctions and was rejected. (<u>Id.</u>) Administrative Remedy No. 802395-F1 which was submitted on November 24, 2014, related to a claim by West that his mail was not being forwarded "from previous institution." (<u>Id.</u>)  Finally, Administrative Remedy No. 803650-F1 which was submitted on December 8, 2014, as noted previously related to "policy - spending limit." (<u>Id.</u>)

**IV.  <u>Discussion</u>**

Defendants make several argument, including that summary judgment should be entered in their favor because West failed to exhaust his administrative remedies, and that his claim that Defendant Harding wrote a false incident reports against him

24

is barred by the favorable termination rule of <u>Heck v Humphrey</u>, 512 U.S. 477 (1994) and <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997). Both of these argument have substantial merit.

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Woodford v. Ngo</u>, 126 S.Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement."  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000).  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  <u>Woodford</u>, 126 S.Ct. at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  <u>Id</u>. at 2386.  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural

25

default of the claim. <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004). The BOP's procedural requirements for the exhaustion of administrative remedies have been outlined above. 28 C.F.R. §§ 542.10-542.19.

Putting aside his bare denials set forth in his response to the Defendants' statement of material facts, there is no evidence from which it could be concluded based on a preponderance of the evidence that he sought administrative relief and exhausted those remedies with respect to the constitutional claims, including his Eighth Amendment excessive force claims, raised in his present complaint. Also, there is no evidence that he filed a administrative remedy with respect to being forced to receive intravenous fluids on August 22, 2013. In light of the Defendants' statement of material facts and evidentiary materials, it is clear that West has failed to exhaust his available administrative remedies with respect to the claims set forth in his complaint.[7]

_____

7. Although West appears to have exhausted his administrative remedies with respect to the sanctions imposed by the DHO on June 6, 2013, for his assaultive behavior of May 14, 2013, he did not submit an administrative remedy regarding his claim that the correctional officers then used excessive force against him. Furthermore, he has not claimed or presented any evidence that he raised during the disciplinary hearing held on June 4, 2013 or the subsequent administrative appeals the issue of excessive force.  In fact the Discipline Hearing Officer Report reveals that West refused to make a statement other than merely indicating he understood his rights when explained to him and stated that section 11 of incident report was not accurate and
(continued...)

West contends that he was retaliated when Defendant Harding filed a false incident report relating to the events of August 22, 2013, and he requests an award of damages.  In addition to having failed to exhaust his administrative remedies with respect to this claim, the claim is subject to dismissal under the favorable termination rule of <u>Heck</u> and <u>Edwards</u>.  The DHO found West guilty of the prohibited act set forth in that incident report and imposed 27 days loss of good conduct time. In <u>Heck</u>, the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination,

_____

7.   (...continued)
that he was "not guilty" of committing the prohibited act of assaulting correctional officer Nogle.  (Doc. 14-1, at 73-74.) Paragraph 11 of the Incident Report prepared by Defendant Nogle states as follows: "Description of incident: Time 9:36 AM Date 05/14/2013 Staff became aware of incident: While escorting I/M West #54421-060 to D-Bock third floor holding cage, he became verbally aggressive and kicked me in my left knee.  Immediate force was used to place the inmate on the floor with the minimal amount of force necessary to restrain the inmate. Several orders were given to stop resisting while staff was trying to regain control of the inmate. I/M West #54421-60 kept resisting by kicking his legs until additional staff arrived and I was relieved of my duties." (Doc. No. 14-1, at 57.)

or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87.

In Edwards, the Supreme Court extended the rationale in Heck to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action: "[t]he principal procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. Id. at 646-47.

West's action specifically seeks damages. An award of damages would implicate the validity of the underlying disciplinary proceedings. Under Heck and Edwards, West cannot assert such a claim unless he can demonstrate that the DHO's decision regarding the misconduct was invalidated on administrative appeal or through issuance of a writ of habeas corpus. This he is unable to do as the documentary evidence before this Court shows that the DHO's decision relating to the August 22, 2013, incident was not challenged on appeal through the BOP's administrative remedy review system. Further, the record contains no allegations that a petition for writ of habeas corpus

28

challenging the validity of the misconduct proceeding was ever filed, let alone resolved favorably to West, nor is there anything in the record from which we could infer such an action.  Thus, because the disciplinary proceedings relating to the incident report has not been determined unlawful, it is appropriate to dismiss West's claim for damages relating to the claims asserted against Defendant Harding that he filed a false incident report, as West cannot, under <u>Heck</u> and <u>Edwards</u> maintain a <u>Bivens</u>[8] action.

An appropriate order will be entered.

---

8.  The <u>Heck</u> and <u>Edwards</u> rulings have been held applicable in <u>Bivens</u> proceedings as well as § 1983 actions.  <u>Clemente v. Allen</u>, 120 F.3d 703, 705 (7th Cir. 1997).